IN THE UNITED STATES DISTRICT COURT FILED
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION                    02 NOV 14 PM 3:46

U.S. DISTRICT COURT
N.D. OF ALABAMA

EBONY FRAZIER,                    )
                                  )
        Plaintiff,                )            CIVIL ACTION NO:
                                  )
v.                                )            CV-01-AR-1606-S
                                  )
CITY OF ADAMSVILLE, et al.,       )                    ENTERED
                                  )
        Defendants.               )            NOV 1 4 2002
                                  )
*****************************************************************
ANTHONY KELLEY,                   )
                                  )
        Plaintiff,                )
                                  )
v.                                )            CIVIL ACTION NO:
                                  )
CITY OF ADAMSVILLE, et al.,       )            CV-01-AR-1607
                                  )
        Defendants.               )
                                  )
                                  )

## MEMORANDUM OPINION

Before the court is a motion for summary judgment filed by

defendants, City of Adamsville ("Adamsville"), David Wilson

("Wilson"), Kenneth Walker ("Walker") and Edward Collins

("Collins")(collectively "defendants"). Wilson is Chief of Police

of Adamsville. Walker is the arresting officer. In response to a

back up call by Walker, Collins assisted in the arrest of

plaintiffs in this case, Ebony Frazier ("Frazier") and Anthony

Kelley ("Kelley"). Kelley and Frazier allege federal violations

of their Fourth Amendment rights and their equal protection

1



rights guaranteed by the Fourteenth Amendment, both violations being actionable under 42 U.S.C. § 1983, and the state law torts invasion of privacy, intentional infliction of emotional distress, false imprisonment, and outrage. This court has previously dismissed the action as against former defendants Victor Goolsby, Edward Scott, Sr., James Thompson, Bill Brown, and James Moore. Plaintiffs have now moved to dismiss all of their claims brought against all defendants in their official capacities, all claims against the estate of the former Adamsville mayor, Leland Adams, all claims against Collins, and the claim of intentional infliction of emotional distress against Adamsville.

## Statement of Undisputed Facts

This case arose out of an incident that occurred on the night of June 27, 1999 during which Kelly and Frazier, along with the other passengers in Kelley's car, were stopped by Walker, a lone Adamsville police officer, while plaintiffs were driving on Minor Parkway in Adamsville.  Plaintiffs are black. The arresting officers are white. Walker testified that he stopped Kelley, who was the driver, for reckless driving and/or not wearing a seatbelt. At Kelley's municipal court trial and in the police report Walker only cited "reckless driving" as the reason for the stop. He never mentioned a seat belt violation. Frazier testified that she heard Walker tell Kelley that he had been pulled over

for a seat belt violation. Frazier testified that Walker did not mention reckless driving or anything about a child safety restraining violation. Kelley testified that he personally had on his seat belt. Frazier also testified that Kelley was wearing his seatbelt. Shortly after Walker stopped Kelley and Frazier, Collins, another Adamsville police officer, arrived at the scene, ostensibly to assist with the stop, which had already occurred.

Walker asked Kelley to step out of the vehicle, patted him down for weapons and asked if he could search the vehicle. Kelley consented to the search, and Walker asked him to sit in the patrol car while the search was being conducted. Frazier was also asked to step out of the car and was patted down by Collins. She was placed in the patrol car with Kelley. Once Kelley and Frazier were in the patrol car they could not open the door. After the officers finished searching Kelley's car, Frazier returned to it while Kelley waited at the front of the patrol car to receive citations from Walker.

Before issuing citations, Walker went to the rear seat of his patrol car and lifted it up and looked under it. This is customary procedure after placing a person in a patrol car. Walker claims that he found two small off-white rock like items which turned out to be cocaine. Kelley stated that Walker said: "shame, shame, shame, look what I found." Collins then placed Kelley and Frazier under arrest for possession of cocaine. On the

3

way to jail, Frazier, who was very upset, called Walker names. She said Walker told her that her child was going to DHR and that he was sorry that he missed the Rodney King event. After waiting in jail for some time, Frazier and Kelley were released because the Jefferson County District Attorney's office would not sign a warrant for drug charges. Kelley ultimately pled guilty to not using a child safety restraining device on the occasion in question. This was the only conviction that eventuated from the incident. All other charges were dismissed against Kelley and Frazier.

Adamsville's policy manual is devoid of any information whatsoever regarding how to report and to investigate allegations of police misconduct, and Adamsville had no written police policy of any kind at the time of Kelley's and Frazier's arrest. Sergeant Richardson, ("Richardson"), the internal affairs officer for the city, testified that he was aware of 29 to 30 drug arrests that Walker had made during his first three months of employment by Adamsville and that other officers were concerned that these numbers were unusually high. In response to this information about Walker, the only thing Richardson did was have a conversation with Walker in which Richardson told him "any drug arrests made should be accurate and done right." Richardson never interviewed any witnesses to Walker's drug arrests. Wilson also confirmed that Adamsville did not have any written policy and/or

procedure for investigating complaints of police misconduct.
Ginetta Smith ("Smith"), an Adamsville dispatcher, testified that
she was aware of police misconduct concerning other officers.
When asked about the policy or procedure if someone saw improper
conduct she said "See and don't see, I guess. . .Just mind your
own business. I mean, me, personally, I just go ahead on.
Because, I mean, who I'm going to tell . . .. You can report it
but I don't know what would have been done." Other dispatchers
offered similar testimony.  Frazier and Kelley also contend that
after the FBI began investigating Adamsville, Walker's drug
arrests decreased. Adamsville began documenting complaints, hired
a full-time internal affairs officer, appointed a police
commission with law enforcement experience, and implemented a
citizen complaint form as well as a citizen's survey form.

## Analysis

Frazier and Kelley allege that Walker and Collins deprived
them of their constitutional rights by planting drugs on them, by
taking them into custody without probable cause, and by detaining
them for an unreasonable length of time. Collins claims qualified
immunity as an absolute defense, but this defense becomes a moot
point because Kelley and Frazier now concede that all claims
against Collins are due to be dismissed. Walker does not claim
that he is entitled to qualified immunity or is due summary
judgment on the 42 U.S.C. § 1983 claim. This would not preclude

the court's *sua sponte* finding that Walker is entitled to qualified immunity if the court had concluded that he was so entitled. However, Walker admits that there is a dispute of material fact over whether the two crack rocks he says he discovered underneath the rear seat of Walker's patrol car were hidden there by Kelley and/or by Frazier, or were planted there by Walker. If Kelley's and Frazier's version is credited, Walker is certainly not entitled to qualified immunity. Kelley's and Frazier's version is entitled to be credited under summary judgment consideration. Thus, Walker's motion for summary judgment will necessarily be denied.

Frazier and Kelley allege that Adamsville and Wilson violated 42 U.S.C. § 1983 by failing to take actions to prevent violations of citizens' constitutional rights. Adamsville and Wilson contend that summary judgment is due them on Kelley's and Frazier's claim based on an alleged failure to train and supervise because plaintiffs did not offer evidence that Adamsville or Wilson acted with deliberate indifference to the rights of citizens by failing to provide training to Walker. First, Adamsville argues that Walker was, in fact, properly trained at a state recognized police academies prior to his employment and that he received additional training after beginning work. Furthermore, Adamsville contends that it did not have prior knowledge that Walker needed any additional training

6

because there were only two alleged instances prior to this one wherein there were allegations that drugs were planted by Walker on a subject. Of course, no police training is required for an officer to know that it is illegal, improper and criminal to plant drugs on a citizen.

In addition to the alleged failure to train, Kelley and Frazier also contend that Adamsville and Wilson had a policy or custom of not investigating or documenting complaints of police misconduct and that this conscious disregard led to Kelley and Frazier's arrest. Adamsville and Wilson maintain that they do not have any policy or custom of allowing officers to plant drugs on citizens, unlawfully search, seize or arrest citizens, or otherwise deprive citizens of their constitutional rights. However, there is sufficient evidence to support Kelley's and Frazier's assertions of indifference. The policy manual is devoid of any information whatsoever regarding reporting and investigating allegations of police misconduct, and no written police policy of any kind existed at the time of Kelley's and Frazier's arrest. Richardson, the internal affairs officer, testified that he was aware of the 29 to 30 drug arrests that Walker made during his first three months of employment and that other officers were concerned that these numbers were unusually high. In response to this information, the only thing Richardson did was have a conversation with Walker to tell him that "any

7

drug arrests made should be accurate and done right." Richardson
never interviewed anybody who might have shed light on Walker's
possible misconduct.  Wilson having confirmed that Adamsville did
not have any written policy and/or procedure for investigating
complaints of police misconduct. Smith, a dispatcher, testified
that she was aware of police misconduct violations concerning
other officers. When asked about city policy or procedure if
someone saw improper conduct she said "See and don't see, I
guess. . .Just mind your own business. I mean, me, personally, I
just go ahead on. Because, I mean, who I'm going to tell . . ..
You can report it but I don't know what would have been done."
Other dispatchers offered similar testimony.  Frazier and Kelley
point out that once the FBI began investigating, Walker's drug
arrests decreased, especially after Adamsville put several new
measures in place, including the requirement that citizens'
complaints against officers be documented.

     Kelley and Frazier now concede that Adamsville's  and
Wilson's failure to teach their officers not to plant drugs for
the purposes of effectuating an arrest is an illusory concept and
that defendants are due to be granted summary judgment on that
issue. However, they do not concede the non-viability of their
claim based on the failure to train officers when and how to
conduct a stop for alleged reckless driving. However, at the time
of Frazier's and Kelley's arrests the undisputed facts show that

neither Wilson nor anyone having executive or legislative authority at Adamsville, had any reason to believe that Walker needed additional training on this subject. Walker was trained at a recognized police academy as to what constitutes reckless driving and when he should and could place a detainee in his patrol car. Walker, himself, is another matter. Summary judgment will be granted to Adamsville and Wilson on both failure to train issues.

A genuine dispute of material fact exists as to whether Adamsville's and Wilson's unwritten policies, procedures and customs violated plaintiffs' constitutional rights. *See* Vineyard v. County of Murray, 990 F.2d 1207, 1213 (11th Cir.), *cert. denied,* 510 U.S. 1024, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993). Based on similar facts to this case, the court in *Vineyard* found substantial evidence to support the jury's conclusion that Murray County had inadequate policies of supervision, discipline and training of deputies in the Murray County Sheriff's Department and that these policies demonstrated the deliberate indifference of the county to the rights of arrestee to be free from the use of excessive force by the county's deputies. Adamsville and Wilson try to distinguish the instant case from *Vineyard* because in *Vineyard* the plaintiffs produced an expert to support their theory that the violations alleged there would not have occurred if there had been a better system for investigating complaints.

This distinction is not significant. Expert testimony on this subject is not necessary. A jury could have come to the same conclusion in *Vineyard* without the expert testimony.

Walker, Collins, and Adamsville assert they are entitled to summary judgment on Count Two, unlawful arrest without probable cause, because "the undisputed facts show that Officer Walker had probable cause to make the initial stop of Kelley's vehicle." Defendants also contend that Kelley is precluded under *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 2372-2373 (1994), from claiming that this stop was made without probable cause because he pled guilty to failure to restrain a child in a safety seat. According to defendants, Kelley's claims are precluded because if he were successful in this case it would necessarily imply that Kelley's conviction on the child restraint violation was invalid. In *Heck*, the Supreme Court held that a person who had pled guilty to drug possession could not subsequently sue the arresting officer for planting drugs on him unless the conviction had been set aside, expunged, reversed on appeal or otherwise declared invalid. *Id. at 487.* The instant case is easily distinguishable from *Heck.* Kelley never pled guilty to possession of a controlled substance. He pled guilty to a relatively minor traffic violation. Walker now argues that Kelley's failure to restrain the children was one reason he stopped the car. However, he testified at one point that he pulled the car over for

10

swerving and that he did not notice that any children were not properly restrained until after the car was stopped.  Kelley and Frazier have raised a genuine dispute of material fact on this issue.

Adamsville and Wilson argue that they are due summary judgment on the § 1983 racial discrimination claim because there is no evidence that any of the alleged wrongdoing was racially motivated. Kelley and Frazier agree that the race discrimination claim should be dismissed as against all defendants except Walker, who does not seek summary judgment on this claim.

No motion for summary judgment was filed on behalf of Walker as to the invasion of privacy claim, the intentional infliction of emotional distress claim, or the false imprisonment claim. In an abundance of caution, summary judgment will be denied Walker as to these claims.

Summary judgment will be granted on all of the state law claims against Adamsville because all said claims involve intentional torts.

Walker's motion for summary judgment will be denied as to plaintiffs' outrage claim against him. If Walker planted cocaine on plaintiffs it was a sufficiently outrageous act to meet Alabama's high threshold for establishing this tort.

Plaintiffs have filed a motion for leave to amend their complaint to correct a typographical error in that Count One

alleges that it was brought under § 1981 when it should have read § 1983. The allegations in Count One of both complaints, as well as the factual allegations supporting the complaints, were entirety sufficient to notify defendants that this was always a § 1983 action and not a § 1981 action. This motion will be granted and the amendment deemed filed before this opinion.

Plaintiffs also have filed a motion for sanctions against Adamsville and Wilson for non-production of documents and spoilation of evidence. Adamsville and Wilson say that they could not locate the dispatch logs for the arrest of Kittle, plaintiff in another, separate case assigned to another judge of this court. Walker was involved in the Kittle arrest and was there accused of planting drugs on Kittle. Plaintiffs claim that these records are necessary to their case because they could seriously undermine Walker's credibility. Plaintiffs ask this court to enter an order sanctioning Adamsville and Wilson for noncompliance with this court's order compelling defendants to produce the requested documents. Adamsville and Wilson maintain that they have made every effort in good faith to comply with plaintiffs' discovery requests and have simply not been able to locate these particular records. They contend that no evidence has been destroyed or spoiled. Plaintiffs motion for sanctions will either be dealt with it at the pre-trial conference or after trial.

12

## Conclusion

A separate order consistent with this opinion will be entered.

DONE this _____ 14th ___ day of November, 2002.

_____
WILLIAM M. ACKER, Jr.
UNITED STATES DISTRICT JUDGE